JOHN M. SWEENEY *vs.* DAVID PRATT ET AL.

Third Judicial District, Bridgeport, Oct. Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

An obligee in a bond for a deed, who has paid no portion of the purchase price of the land, has no interest therein which can be levied upon under execution, nor any interest to which a judgment lien can attach.

The parties were at issue as to whether a payment made by the debtor to his creditor was intended to apply to and include a particular

note. *Held* that a letter written by the creditor to the debtor, at the time of such payment, showing how the money had been applied, was, in connection with the debtor's failure to object to such application, admissible in support of the contention of the creditor.

The knowledge of an attorney, gained in the very business in respect to which he is such attorney, is to be imputed to his client.

An estoppel by conduct always presupposes error on the one side and fault or fraud on the other.

[Submitted on briefs Nov. 23d, 1897—decided Jan. 21st, 1898.]

SUIT to foreclose a mortgage and also a judgment lien, brought to the District Court of Waterbury and tried to the court, *Bradstreet, J. ;* facts found and judgment rendered for the plaintiff, and appeal by both parties for alleged errors in the rulings of the court. *No. error.*

The complaint alleged that on the first day of August, 1891, the defendants, D. & H. Pratt, made twenty of their promissory notes, each for the sum of two hundred dollars, payable to the order of the Cheshire Manufacturing Company: the first, one year from date, and the other nineteen, one each six months thereafter, with interest at the rate of five per centum per annum payable semi-annually, together with all taxes on said notes laid against said Manufacturing Company or the holders of the notes; that said notes were secured by a mortgage of the tract of land sought to be foreclosed; that thirteen of said notes had been paid in full, and the sum of $117.22 on the fourteenth, so that there was unpaid, in whole or in part, seven of said notes, being those last payable, and amounting in the whole to the sum of $1,282.28; that on May 19th, 1892, the said company was compelled to pay and did pay the sum of $70 taxes on the property mortgaged, which had been laid against the said D. and H. Pratt; that on October 2d, 1896, the said Manufacturing Company duly assigned the said seven unpaid notes and the mortgage securing them, to the plaintiff, and that he was now the actual and *bona fide* owner and holder of the said unpaid notes and said mortgage.

The complaint in a second count prayed for the foreclosure of a judgment lien on the same land.

Curtis Thompson of Bridgeport and Catherine A. Pratt of

Naugatuck, were made parties defendant, each of whom, it is alleged, had acquired some interest in said land which accrued after the rights of the plaintiff.

The answer of D. & H. Pratt and Catherine A. Pratt, alleged that the said Pratts had, in the land on which the judgment lien was placed, at the date thereof, no such interest as could be taken or affected thereby; that the said company had discharged D. &. H. Pratt from the payment of said taxes, and that sixteen of said notes had been paid in full, and a part of the seventeenth.

The answer of Curtis Thompson alleged that there had been paid the sum of $3,400 on said notes and applied in payment of those which the soonest became due, so that there was at that date due only the sum of $600 of the whole amount of the said notes; that he loaned to the said D. & H. Pratt, on the 28th day of May, 1894, the sum of $570 and took as security therefor a second mortgage on the said tract of land now sought to be foreclosed, in the belief that only $600 was due on the principal of said twenty notes; and that he had no knowledge or suggestion that any more was due.

The trial court denied the prayer of the plaintiff for a foreclosure of the judgment lien; denied the plaintiff's claim to have a foreclosure as to the said sum of $70; found that seven of the said notes were unpaid in whole or in part, and, as the principal sum of these notes was not by their terms due, but only the sum of $315.22 of interest, rendered judgment that unless the defendants paid the said sum so due they should be foreclosed of all right to redeem the said premises. From this judgment both parties appealed.

The additional facts in the case, so far as necessary, are stated in the opinion.

*Curtis Thompson* and *Edmund Zacher*, for the appellants (defendants).

*E. P. Arvine*, for the appellant (plaintiff).

ANDREWS, C. J. We think the trial court decided correctly as to the judgment lien. At the time that lien was

placed on the land, May 28th, 1890, the said D. and H. Pratt had no interest in the land which could have been levied upon under an execution on that judgment. They had only a bond for a deed. They had paid nothing whatever on the notes mentioned in the bond. They had no title to the land; they were not even equitably possessed of any right to have a title. General Statutes, § 3034; *Beardsley* v. *Beecher*, 47 Conn. 408, 412; *Loomis* v. *Knox*, 60 id. 343; *Hobbs* v. *Simmonds*, 61 id. 235.

The trial court has, in effect, found that the Cheshire Manufacturing Company had discharged the said D. and H. Pratt from the payment of the said sum of $70 paid for taxes; and this finding is on evidence to which no objection was made. We think this finding was conclusive.

As respects the twenty notes mentioned in the complaint, the only question was and is, how many of them are unpaid? Are there seven unpaid; or are there only three or four? As to these notes the plaintiff is the assignee of the Cheshire Manufacturing Company. He has just such right in the notes and in the mortgage—neither greater nor less—as that company would have if it was the plaintiff. Indeed, to ascertain the plaintiff's rights in this case, we must inquire what rights of that company were conveyed to the plaintiff by its assignment to him. There is no claim that he has parted with anything since he became the assignee. The right so assigned to the plaintiff will be made to appear by an examination of the several transactions which have been had between the said company and the said D. and H. Pratt, and they are as follows : On the 16th day of August, 1886, the said company gave to the said Pratts a bond for a deed of the land now in question. The condition of this bond was that the said Pratts should pay to said company their sixteen certain notes, each for the sum of $437.50, amounting in the whole to $7,000, and payable as was therein specified. On the same day the said D. and H. Pratt made and delivered to the said company eight other notes, each for the sum of $625, amounting in the whole to $5,000, and secured the payment of said last mentioned notes by a chattel

mortgage of certain machinery in a factory then occupied by the Pratts in Naugatuck. On the said series of sixteen notes the said Pratts never paid anything, and never had, and were never entitled to have, a deed, by virtue of the said bond for a deed.

In 1891 negotiations were had between the said company and the Pratts, which resulted in a compromise. The said sixteen notes were surrendered, and the company gave a warrantee deed of the land to the Pratts. The Pratts, in payment therefor, made the said twenty notes described in the complaint, and secured the payment thereof by the mortgage now in suit and also by a chattel mortgage on the machinery before mentioned. This machinery was in the factory on the land mortgaged. On the     day of     , 1892, the factory and machinery were totally destroyed by fire, and some dispute arose as to whom the insurance money should be paid. On the 14th day of May of that year, at a meeting at which the said company was present by its duly appointed officer, and its attorney E. P. Arvine, Esq., and at which the said D. and H. Pratt were present with their attorney, N. R. Bronson, Esq., an agreement was entered into and executed in duplicate, the material parts of which are as follows: " This agreement witnesseth: That whereas said Herbert Pratt and David Pratt are indebted to said Cheshire Manufacturing Company in sundry notes secured by mortgage on real and personal property situated in said Naugatuck; and whereas a certain factory situated in said Naugatuck, being a portion of the real estate upon which the said Cheshire Manufacturing Company held a mortgage securing twenty of said notes, was consumed by fire, and a portion of the machinery likewise mortgaged to said company to secure notes was also destroyed; and whereas said property was insured by policies payable to said Cheshire Manufacturing Company as their interest might appear, and also to the said Pratts; and whereas said losses have been adjusted, and there is due on account of the same on said policies the sum of three thousand four hundred dollars: Now therefore it is agreed that said three thousand four hundred dollars shall be

immediately paid to said Cheshire Manufacturing Company, to be theirs absolutely, and that if within six months from date hereof the said Pratts shall pay to said company the further sum of six hundred dollars, with interest from date to date of payment, said company shall deliver to said Pratts, or to any person by them requested, all notes which it now holds against said Pratts, and which shall fully discharge and release all claims under said mortgages securing said notes, or any other claims against them; or shall assign and transfer the said interests and said claims against said Pratts, and any securities for said claims, to any person or persons by said Pratts suggested; and that if said Pratts shall fail within six months from date to pay said sum of six hundred dollars, with interest as aforesaid, all the notes held by said Cheshire Manufacturing Company shall be payable according to their tenor, and said sum of three thousand four hundred dollars shall be applied, as on the date of its reception by said company, in discharge of the notes so held by said company as aforesaid that shall be then due and that shall soonest become due, so far as said money shall extend, and the notes so discharged shall be regarded as paid on the date of the payment to said company of said thirty-four hundred dollars."

This agreement was dated May 14th, 1892, and was executed by all said parties. It is conceded and is found that the said Pratts did not within six months after said agreement pay, nor have they at any time since paid, said sum of $600. At that time it was supposed that the sum to be paid on the insurance policies was $3,400. The amount in fact paid was a little less, viz. $3,383. At this time there was due from D. and H. Pratt to the said company the said twenty notes mentioned in the complaint, and the sum of $542.82 on the last note of the said series of eight notes dated on the 6th day of August, 1886, and secured by the chattel mortgage; in all twenty-one notes. The last mentioned note was not then in the possession of the said company. It was in the hands of its agents, Porter Bros. & Co., for collection, and was to be recalled from said agents by

the counsel of the company. The trial court finds that it was agreed between the parties that the amount due by said note should be paid from the insurance money, and the balance applied towards said twenty notes, upon those first to become due, and after said balance had paid as many notes in full as it could, the remainder should be indorsed on the note next to become due; and that the insurance money did pay the said sum of $542.82 and thirteen of the said series of twenty notes dated August 1st, 1891, in full, and $117.72 to be applied on the fourteenth note. A few days after the 14th of May, 1892, counsel for the Cheshire Manufacturing Company recalled the said note from Porter Bros. & Co. and sent it together with the thirteen of said twenty notes, to N. R. Bronson, Esqr., counsel for the said Pratts, in a letter as follows:

"NEW HAVEN, CONN., May 17th, 1892.

"Messrs. TERRY & BRONSON,

" *Gentlemen* : Inclosed you will find the New York note, with statement of Porter Bros., amount due, $542.82. We have received from the insurance companies $3,383, not $3,400—$3,383.00 less $542.82 leaves $2,840.18 towards canceling the notes secured by real estate; that is to say, the 20 notes.

"Thirteen of these notes amount to $2,600.00. Interest to May 14, ' 92, 6% $122.46. Total $2,722.46. $2,840.18 less $2,722.72, leaving $117.72 to be indorsed on the 14th note.

"I send the old note and the 13 secured by mortgage on real estate, and have indorsed $117.72 on the 14th note.

"Respectfully yours, E. P. ARVINE."

This letter with the notes included was received by Mr. Bronson and by him made known to his clients, the Pratts, or to one of them. Neither Mr. Bronson nor either of the Pratts made any objection to the application of said insurance money which had been made by the Cheshire Manufacturing Company as indicated in said letter, till the trial of this case, a period of nearly five years. On the 21st day of July, 1892, the Cheshire Manufacturing Com-

pany released the chattel mortgage by which the said series of eight notes had been secured. Of this series the said $542.82 note was the last.

No payment, either of principal or interest, has been made on the said seven notes—the last to become due of the said series of twenty—since the said 14th day of May, 1892. They are all still due and unpaid; and there is interest due from said May 14th, 1892, to April 14th, 1897, amounting to the sum of $315.22.

The said Cheshire Manufacturing Company conveyed all its interest in said seven notes and in the mortgage security therefor, on the 3d day of October, 1896, to the plaintiff, who has been ever since and is now the owner of the same.

On the 28th day of May, 1894, the defendant Curtis Thompson loaned to the said D. and H. Pratt the sum of $570, and to secure the note therefor took a second mortgage on said land. At that time Thompson examined the land records. The Pratts showed him the said agreement of May 14th, 1892, and represented to him that the sum of $3,400 had been paid on said twenty notes, so that there was then due on the said notes and secured by the prior mortgage, only $600. The mortgage to Thompson was at once recorded.

Upon the trial the defendant offered the testimony of the said David Pratt and Herbert Pratt, and claimed to have proved thereby that it was the intent of the parties to the said agreement of May 14th, 1892, not to have any part of the insurance money applied in payment of the said $542.82 note. In rebuttal of this testimony, the plaintiff offered the letter of May 17th, 1892, and in connection therewith the testimony that since said letter was received the Pratts had never objected to the application of the insurance money by the Cheshire Manufacturing Company, as was therein stated.

We think this letter with the evidence was properly admitted. If the Pratts really understood that the said note was not to be paid out of the insurance money, it is incredible that they should not have so stated when this letter came to Mr. Bronson. Their conduct then was an admission that

that note was to be paid out of that money. And in this respect, the fact that the letter was shown only to one of the Pratts is not of much consequence. Mr. Bronson was the attorney of both in this agreement. His knowledge of the application of the money made by the Cheshire Manufacturing Company was the knowledge of the Pratts. The knowledge of an attorney gained in the very business in respect to which he is attorney, is imputed to his client. The notice to Mr. Bronson given by the said letter was notice to his clients. *Melms* v. *Pabst Brewing Co.*, 93 Wis. 153; *Constant* v. *University of Rochester*, 111 N. Y. 604.

. The defendant Thompson claims that the plaintiff is estopped to assert that there is more than $600 due on said series of twenty notes. We are not able to find any ground for this claim. The recording of the mortgage to Thompson did not affect any right of the Cheshire Manufacturing Company in the land, or in the unpaid notes. The plaintiff sues to enforce a right which came to him from the Cheshire Manufacturing Company. No estoppel can exist against him unless one could have been set up against that company had it been the plaintiff. An estoppel by conduct always presupposes error on one side and fault or fraud on the other. *Morgan* v. *R. R. Co.*, 96 U. S. 716, 720. However much the defendant Thompson may have been in error, there is not the slightest pretense of any fault or fraud on the part of the .Manufacturing Company, nor, indeed, on the part of the plaintiff.

There is no error.

In this opinion the other judges concurred.