VITTORIA RINALDI *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

420

Argued April 5th—decided May 2d, 1934.

*Ulysses G. Church,* for the appellant (defendant).

*Michael J. Galullo,* with whom was Theodore V. Meyer, for the appellee (plaintiff).

AVERY, J.   The defendant issued to plaintiff's decedent, John Rinaldi, two policies of life insurance, payable to his wife, which were in force at the time of his death.   The first, known as a whole life policy, contained a provision for the payment of additional benefits in case of death resulting from accidental injury; the second, an industrial policy, contained a similar provision although somewhat differently phrased.   The pertinent provisions of the policies appear in the footnote, identified as (a) and (b) respectively.   After

---

(a) "The amount of accidental death benefit specified on the first page hereof shall be payable in addition to the face amount of insurance immediately upon receipt of due proof at the home office of the company that the death of the insured occurred during the continuance of this policy while there was no default in the payment of premium, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental causes and that such death occurred within sixty days of the accident, provided, however, that no accidental death benefit shall be payable if the death of the insured resulted from suicide—whether sane or insane; from having been engaged in military or naval service or in aviation or submarine operations; from a state of war or insurrection; or, directly or indirectly from disease in any form; and provided, further, that if any total and permanent disability benefits, as hereinafter provided, shall be al-

decedent's death, the defendant made payment of the amounts due upon the face of the policies but refused payment of the additional benefits provided in the case of accidental death, and the plaintiff brought this action to recover the additional amount payable in case death resulted from accidental injury.

The court has found these facts: The deceased was a well-built, robust man of medium height and at the time of his death was fifty-two years and six months of age. From 1929 until the time of his death, November 25th, 1932, he had been continuously employed by the American Brass Company in its carpenter shop, averaging thirty to forty-one hours a week during 1929 and 1930, eighteen to twenty hours a week in 1931 and a slightly lower average during 1932. He owned a farm in Woodbury and on the morning of November

---

lowed under the policy, these provisions as to accidental death benefit shall be null and void.

"Before making any payment on account of accidental death, the company shall have the right and opportunity to examine the body and make an autopsy unless prohibited by law.

"The accidental death benefit is granted in consideration of the payment of an extra quarter annual premium of $ .27, which is included in the amount of the premium stated on the first page hereof, and which is payable at the same time and subject to the same provisions as to payment as the regular premium under this policy."

(b) "Upon receipt of due proof that the insured after attainment of age 15 and prior to the attainment of age 70, has sustained bodily injury, solely through external, violent and accidental means, occurring after the date of this policy and resulting in the death of the insured within ninety days from the date of such bodily injury while this policy is in force, and while there is no default in the payment of premiums, the company will pay in addition to any other sums due under this policy and subject to the provisions of this policy as an accidental death benefit a series of weekly installments of the same number as specified on the first page hereof, each equal to the amount of the installment specified in the schedule on the first page hereof, less the amount of any installment that has become payable as a disability benefit under this policy on account of the same bodily injury, except as provided below:"

25th, 1932, he went there with his son and nephew, both adults. They spent the day gathering and sawing wood with a power saw. The deceased did the actual sawing, standing directly in front of the saw and pushing the platform containing the wood against it. They had been at work all day and at about four-thirty in the afternoon, just as they were finishing, a piece of wood flew up from the saw and struck the deceased a violent blow on his right malar bone. He uttered an exclamation, put his hands to his face and staggered into the arms of his son. He did not speak again. He was carried by the two young men into a house upon the property, where the blood was washed from his face, and was immediately taken to the Waterbury Hospital. He was dead upon arrival. The wound in his cheek or temple was depressed, about one and one-half inches long, irregular in shape, and about an inch wide. In preparing the body for burial, the undertaker had to use wax about the size of an English walnut to build up the face at that point to its normal shape, indicating a very serious depression. From February to October, 1930, deceased had received treatment at irregular intervals from a physician. When he first consulted the doctor, there were well defined subjective symptoms of angina pectoris. These disappeared promptly. Clinical examination with the stethoscope indicated a chronic myocarditis which yielded to treatment and at his last visit the condition showed marked improvement. So far as appeared, this was the only medical attention ever given the deceased during his life. The defendant examined the body before burial and did not demand an autopsy before interment. When the regular death benefits were paid, the plaintiff was informed in writing and orally by defendant that examination as to the accidental death benefits was still pending. A blow

such as the deceased received was sufficient to cause death, yet an autopsy, even if made, might not disclose this cause. It would have disclosed any cranial fracture and the condition of the heart.

On this appeal, the defendant claims that the court erred in concluding that the plaintiff was entitled to accidental death benefits under the terms of the policies; in holding that the plaintiff was not required to furnish proof of accidental death by an autopsy; and that the proofs of death submitted were sufficient as required by the terms of the policies. The findings of the court are not attacked. The defendant, however, has sought various additions to the finding and attacks the conclusion that the death of the deceased was accidental within the terms of the policies. The additions to the finding sought by the defendant to a large extent consist of its version of the matters detailed. The trial court may accord the testimony a construction different from that asserted by the defendant. *Searle* v. *Gerent,* 114 Conn. 671, 674, 159 Atl. 892. Many of the requested additions consist of an attempt to incorporate in the finding statements as to the testimony of particular witnesses, which is improper. From an examination of the evidence certified, we are satisfied that no addition can be made to the finding by which the position of the appellant will be materially advantaged. The decisive question upon this appeal is whether the court was correct in concluding that the death of the deceased resulted directly from bodily injuries effected solely from accidental causes, and independently of all other causes and not directly or indirectly from disease in any form.

It is a well settled rule in the construction of insurance policies, that when a policy is "so framed as to leave room for two constructions, the words used should be interpreted most strongly against the in-

surer. This exception rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted." *Fricke* v. *United States Indemnity Society,* 78 Conn. 188, 192, 61 Atl. 431; *Dresser* v. *Hartford Life Ins. Co.,* 80 Conn. 681, 710, 70 Atl. 39; *Tomasetti* v. *Maryland Casualty Co.,* 117 Conn. 505, 507, 169 Atl. 54; *Standard Fur Cutting Co.* v. *Caledonian Ins. Co.,* 113 Conn. 108, 113, 154 Atl. 153; *Miller Brothers Construction Co.* v. *Maryland Casualty Co.,* 113 Conn. 504, 513, 155 Atl. 709. We construe the provisions of these policies to mean that if the sole proximate cause of the death of the decedent was an accidental injury, recovery may be had under the terms of the policies, although if disease is a proximate cause, no recovery can be had even though there be an accidental injury.

In *Stanton* v. *Travelers Ins. Co.,* 83 Conn. 708, 710, 78 Atl. 317, in construing a policy somewhat similar in its provisions to those in question, we said: "Even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists." We approve the rule stated in *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351, 353, 30 N. E. 1013, 1014: "An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so, as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes." *White* v. *Standard Life & Accident Ins. Co.,* 95 Minn. 77, 80, 103 N. W. 735; *Fetter* v. *Fidelity & Casualty Co.,* 174 Mo. 256, 268, 73 S. W. 592;

*Modern Woodman Accident Assn.* v. *Shryock,* 54 Neb. 250, 259, 274 N. W. 607; *Penn* v. *Standard Life & Accident Ins. Co.,* 158 N. C. 29, 34, 73 S. E. 99; *National Masonic Accident Assn. of Des Moines* v. *Shryock,* 20 C. C. A. 3, 5; *Continental Casualty Co.* v. *Lloyd,* 165 Ind. 52, 62, 73 N. E. 824; *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 98, 152 S. W. 995; *Winspear* v. *Accident Ins. Co.,* L. R. 6 Q. B. D. 42; *Lawrence* v. *Accidental Ins. Co.,* L. R. 7 Q. B. D. 216. Manifestly, recovery is not barred merely because the injured is suffering from disease. One upon a bed of sickness may meet death by explosion or other accidental means. *Bohaker* v. *Travelers Ins. Co.,* 215 Mass. 32, 34, 102 N. E. 342; *Leland* v. *United Commercial Travelers of America,* 233 Mass. 558, 564, 124 N. E. 517. What is the proximate cause of death in an action like the one under consideration is a question of fact to be determined by the trier from a consideration of the evidence, and cannot be disturbed upon appeal unless the subordinate facts found or admitted are such that reasonable men fairly exercising their judgment could draw but one conclusion therefrom. *Modern Woodman Accident Assn.* v. *Shryock, supra; Lickleider* v. *Iowa State Traveling Men's Assn.,* 184 Iowa, 423, 166 N. W. 363, 365, 3 A. L. R. 1295.

From the facts appearing in this record, we cannot say that the trial court was in error in concluding that the death of the deceased occurred solely from accidental causes within the terms of the policies. If we should add to the finding the fact that the deceased was at the time of his death suffering from chronic myocarditis, this would not suffice to bring about a different decision. The trial court has not found and we are not asked to add to the finding that the blow received by the deceased would probably excite that condition so as to cause death. If we should also add

to the finding the fact that heavy or unusual work or prolonged exertion might so excite the condition of the deceased's heart as to produce death, we should then have a situation where the trial court was confronted with these alternatives: The deceased had received a blow on the head which might alone have produced death; on the other hand, the work the deceased had been doing might have excited his heart condition and so caused his death, contemporaneously with the blow on the head. Under these circumstances the trial court concluded that it was more probable that the blow alone caused the death, and we cannot say that this conclusion was unreasonable.

The defendant examined the body before interment and did not demand an autopsy. If the defendant desired an autopsy, it was incumbent upon it to make the demand therefor within a reasonable time after death and before burial. *Johnson* v. *Bankers Mutual Casualty Co.*, 129 Minn. 18, 151 N. W. 413, 415; *Wehle* v. *United States Mutual Accident Assn.*, 153 N. Y. 116, 47 N. E. 35, 37; *United States Fidelity & Guaranty Co.* v. *Hood*, 124 Miss. 548, 87 So. 115, 117. The proofs of death were upon the forms and in accordance with the requirements of the company and contained the information that the deceased was hit by a piece of wood, and the cause of death was accidental. The claim of the defendant that they were inadequate is without merit.

There is no error.

In this opinion the other judges concurred.