[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #112
The plaintiff, Matthew Stach, brings this action against the defendant, Farm Family Casualty Insurance Company, in an effort to collect $29,458.11 in damages (default judgment) awarded to him in a prior suit (underlying action), Stach v. Berkovitz, Superior Court, judicial district of New Haven at Meriden, Docket No. 025616 (September 30, 1998, Beach, J.). The plaintiff's allegations against the defendant arise pursuant to a homeowner's insurance policy[1] (the policy), that the defendant issued to Thomas Kent and under which Christopher Kent, a defendant in the underlying action, is an insured.
By way of complaint (operative complaint) dated March 25, 1996, the plaintiff brought the underlying action against John Berkovitz[2] and Christopher Kent. Counts two and four of the operative complaint are the basis of this motion.[3] The second count alleges that Kent "intentionally assaulted and battered" the plaintiff causing him to sustain injuries. (Defendant's Exhibit 1, p. 4). Whereas, the fourth count alleges that the injuries the plaintiff sustained from being "attacked" by Kent caused him to incur medical expenses, suffer lost wages and limited his life activities. (Defendant's Exhibit 1, pp. 9-10). On September 30, 1998, the court, J. Beach, rendered a default judgment in favor of the plaintiff.[4]
Thereafter, on April 12, 1999, the plaintiff filed a two count complaint against the defendant, which he amended on June 15, 1999, wherein he alleged the following. On March 29, 1994, he sustained injuries due to the negligence and carelessness of Kent. Because the defendant refused to provide Kent with a defense in the underlying action or satisfy the default judgment, the defendant acted unreasonably, in bad faith and breached its insurance contract with Kent. The policy's liability coverage applies to the claims in counts two and four of the plaintiff's operative complaint and, therefore, he seeks indemnification of his default judgment.
On December 17, 2000, the defendant filed its motion for summary CT Page 4838 judgment on the ground that there are no genuine issues of material fact as to its refusal to defend and indemnify Kent in the underlying action, and that it is entitled to judgment as a matter of law. In support of its motion, the defendant submitted a memorandum of law and copies of the policy, operative complaint and its request for disclosure and production. On January 22, 2001, the plaintiff filed an objection to the defendant's motion and a cross motion for summary judgment on the ground that there are genuine issues of material fact as to the defendant's duty to defend and indemnify Kent in the underlying action. In support of his objection and cross motion, the plaintiff submitted a memorandum of law with no attachments or exhibits. On April 9, 2001, the court heard oral argument on the defendant's motion for summary judgment and on the plaintiff's objection to the defendant's motion and his cross motion for summary judgment. On May 30, 2001, the court, Booth, J., dismissed the action for lack of subject matter jurisdiction. On July 19, 2001, after the filing of the plaintiff's motion for reconsideration and the defendant's memorandum in opposition, the court, Booth, J., vacated its previous order of dismissal and ordered the case reopened.
On August 6, 2001, the plaintiff filed a request to amend his complaint dated June 14, 1999, and submitted his two count amended complaint against the defendant (amended complaint), wherein the following additional allegation is set forth. Pursuant to General Statutes §38a-321, the plaintiff is subrogated to the rights of Kent against the defendant and, therefore, the defendant is obligated to satisfy the plaintiff's default judgment against Kent.
On September 24, 2001, the defendant filed an answer and special defenses in response to the plaintiff's amended complaint. The special defenses state: (1) the defendant properly refused to defend and indemnify Kent because the conduct alleged in the plaintiff's underlying complaint did not constitute an "occurrence" as defined in the policy; (2) such conduct constituted an intentional act, which is excluded from coverage; and (3) because Kent forfeited his own rights to a defense and indemnification by failing to comply with the policy's terms regarding notice, the plaintiff has no rights against the defendant because his rights are no greater than Kent's. The defendant argues that for these reasons any coverage allegedly due Kent under the policy is rendered inapplicable.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation CT Page 4839 marks omitted.) QSP, Inc. v. Aetna Casualty Surety Co., 256 Conn. 343,351, 773 A.2d 906 (2001). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Bracket in original; citation omitted.)Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059
(2000). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Bracket in original; internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v. Washington,258 Conn. 553, 560, 738 A.2d 993 (2001). "[T]he court's function is not to decide issues of material fact, but rater to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . Summary judgment in favor of the defendant is properly granted if the defendant in its motion raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citations omitted; internal quotation marks omitted.) Serrano v. Burns, 248 Conn. 419, 424,727 A.2d 1276 (1999).
The defendant moves for summary judgment on the ground that it had no duty to defend or indenmify Kent in the underlying action because the plaintiff's operative complaint alleges intentional, non-accidental conduct, which the policy specifically excludes from coverage. Thus, the defendant argues that there are no genuine issues of material fact and moves for judgment as a matter of law. In response, the plaintiff argues that there are genuine issues of material fact as to the defendant's duty to defend Kent in the underlying action and indemnify the plaintiff's default judgment.
A. The Contract of Insurance
"It is the function of the court to construe the provisions of the contract of insurance." Flint v. Universal Machine Co., 238 Conn. 637,642, 679 A.2d 929 (1996). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] CT Page 4840 was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Brackets in original; citations omitted; internal quotation marks omitted.) Imperial Casualty IndemnityCo. v. State, 246 Conn. 313, 324-25, 714 A.2d 1230 (1998).
"Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion. . . ." (Citations omitted; internal quotation marks omitted.) Levine v. Advest, Inc., 244 Conn. 732, 746, 714 A.2d 649
(1998). "The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction." Id., 746. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . ." (Citation omitted; internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquois Gas Transmission System,L.P., 252 Conn. 479, 498, 746 A.2d 1277 (2000).
1. Duty to Defend
"Under Connecticut law, an insurer's duty to defend is broader than its duty to indemnify. [I]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) Stamford Wallpaper Co v.TIG Insurance, 138 F.3d 75, 79 (2d Cir. 1998). "On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." Community Action For GreaterMiddlesex County, Inc. v. American Alliance Insurance Co., 254 Conn. 387,399, 757 A.2d 1074 (2000). "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but whether he has, in his complaint, stated facts which bring the injury within the coverage." (Internal quotation marks omitted.) Id., 398. "The existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint. . . . Although the duty to defend is broad, however, it is circumscribed by the language of the insurance contract. The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the courts are free to devise rules." (Citation omitted; internal quotation marks omitted.) Stamford WallpaperCo. v. TIG Insurance, supra, 79. "Hence, if the complaint sets forth a CT Page 4841 cause of action within the coverage of the policy, the insurer must defend. . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Citations omitted; internal quotation marks omitted.) Community ActionFor Greater Middlesex County, Inc. v. American Alliance Insurance Co., supra, 254 Conn. 398-99. Thus, only if the plaintiff's operative complaint sets forth a cause of action that is within the policy's coverage does the contract obligate the defendant to defend and indemnify Kent in the underlying action. The court turns its attention, therefore, to counts two and four of the plaintiff's operative complaint.
The second count of the operative complaint alleges Kent "intentionally assaulted and battered the plaintiff." (Defendant's Exhibit 1, p. 4). Specifically, it alleges that the "assault was willful, wanton, and malicious." (Defendant's Exhibit 1, p. 2). In addition, the operative complaint states that as a result of the "intentional acts" of Kent, the plaintiff suffered the following injuries:
"a.) an impaction fracture distal aspect of the lunate of the right wrist;
b.) an 8% permanent partial disability to the right wrist;
c.) a transverse fracture of the base of the distal phalanx of the left small finger;
d.) severe shock to his nervous system;
e.) pain and suffering; and emotional distress."
The fourth count of the operative complaint alleges that Kent "attacked" the plaintiff and that the plaintiff's injuries "were proximately caused by the negligence and carelessness of the defendant, John Berkovitz. . . ." (Defendant's Exhibit 1, p. 10). Although, the plaintiff made the same allegations against John Berkovitz in count three as he did in count four of his operative complaint, the plaintiff made no amendment to this complaint and, therefore, the court cannot read allegations of negligence and carelessness against Kent into count four if such are not already alleged therein.
 The policy requires "bodily injury" or "property damage" arising out of an "occurrence.
The defendant argues that the plaintiff failed to state in his operative complaint an occurrence" that is covered under the policy. The policy provides that an "occurrence means an accident, including continuos CT Page 4842 or repeated exposure to conditions that result in BODILY INJURY or PROPERTY DAMAGE. All BODILY INJURY and PROPERTY DAMAGE resulting from a common cause shall be considered the result of one OCCURRENCE." (Emphasis in original.) (Defendant's Exhibit 2, p. 5). "BODILY INJURY means bodily harm . . . to a person including required care, loss of services . . . resulting therefrom." (Emphasis in original.) (Defendant's Exhibit 2, p. 4). Thus, in order to generate coverage, the bodily injury must arise from an "occurrence," that is "an accident, including continuos or repeated exposure to conditions that result in bodily injury or property damage." (Defendant's Exhibit 2, p. 5). The defendant argues that because the conduct alleged in the operative complaint is intentional assault and battery, not conduct that arises from an "occurrence," as defined under the policy, the plaintiff did not allege facts sufficient to cause the defendant reason to defend Kent in the underlying action or indemnify him against the plaintiff's default judgment.
Specifically, the defendant argues that under Division V, "Liability," the policy states, "Section A and B do not apply to BODILY INJURY/PROPERTY DAMAGE or MEDICAL EXPENSES: Caused intentionally by or at the direction of an INSURED." (Emphasis in original.) (Defendant's Exhibit 2, pp. 12-13). The policy does not cover the plaintiff's claims because it excludes from coverage the plaintiff's bodily injuries caused intentionally by or at the direction of Kent. "Where an insurer sets up a special exclusion for the purpose of withdrawing from the coverage a specific liability it was unwilling to provide indemnity for, `[t]he burden of proving an exception to a risk is on the insurer.'" Grechikav. Liberty Mutual Fire Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 159540 (July 5, 2001, Doherty, J.), quoting O'Brienv. John Hancock Mutual Life Ins. Co., 143 Conn. 25, 29, 119 A.2d 329
(1955). "[T]he insurer has the burden of demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations . . . are subject to no other interpretation." (Internal quotations omitted.) NewYork v. Amro Realty Corp., 936 F.2d 1420, 1427 (2d Cir. 1991).
The plaintiff contends that the word "accident" is not defined in the policy. (Plaintiff's Memorandum, p. 8). Under Connecticut law, "[a]n accident is an unintended occurrence." Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 590, 573 A.2d 699 (1990). "`Accident' has been defined as "a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance or a combination of causes and producing an unfortunate result. Webster's Third New International Dictionary of the English Language.'" Carvey v. AetnaCasualty Surety Co., Superior Court, judicial district of New Britain, Docket No. 481512 (May 7, 2001, Shapiro, J.), citing ProvidenceWashington Ins. Group v. Albarello, 784 F. Sup. 950, 953 (D. Conn. CT Page 4843 1992). "In analyzing whether or not a policy provides coverage the focus is on whether the event causing the injury was accidental. . . ." Carveyv. Aetna Casualty Surety Co., supra, Superior Court, Docket No. 481512.
Because counts two and four of the operative complaint allege only intentional, nonnegligent conduct by Kent the court finds that such alleged conduct does not fit within the definition of "occurrence, as provided in the policy, as it is not accidental in nature. Rather such conduct falls within a policy exclusion providing no coverage for intentional acts conducted by or at the direction of an insured. The court finds because the policy specifically excluded the alleged intentional conduct, the defendant acted within its contractual rights under the policy by denying Kent a defense and refusing to indemnify the plaintiff's default judgment.
The defendant moves for summary judgment on the ground that it had no duty to indemnify Kent in the underlying action. "General Statutes §38a-321 provides that a judgment creditor shall be subrogated to all the rights which the defendant in the underlying action had against its insurer `and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.'" Carvey v.Aetna, supra, Superior Court, Docket No. 481512, quoting General Statutes § 38a-321. In the underlying action, the plaintiff received a default judgment against Kent and John Berkovitz. "Whether the defendant has a duty to indemnify is a determination that must be made upon the "independent evidence in the trial of the present case. Id., quotingRochon v. Preferred Accident Ins. Co., 118 Conn. 190, 194, 171 A. 429
(1934).
While Kent may not have intended the specific injuries sustained by the plaintiff, his actions in "assaulting," "battering" and "attacking" the plaintiff, thus causing multiple fractures and permanent partial disability to the plaintiff's right wrist is intentional conduct. "It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree . . . are separate and mutually exclusive." (Citation omitted.) American National Fire Ins.Co. v. Schuss, 221 Conn. 768, 775, 607 A.2d 418 (1992). "As Justice Holmes memorably said, `even a dog distinguishes between being stumbled over and being kicked.' Oliver Wendell Holmes, The Common Law 3 (1881)."State Farm Fire Casualty Co. v. Bullock, Superior Court, judicial district of New Haven at New Haven, Docket No. 387111 (May 30, 1997,Blue, J.) (19 Conn.L.Rptr. 599, 602). Because the defendant does not have a duty to defend Kent in the underlying action, the defendant also does not have a duty to indemnify the plaintiff's default judgment. CT Page 4844
The defendant argues that the plaintiff is not entitled to coverage because Kent failed to notify the defendant of the alleged conduct and the underlying action, thus prejudicing the defendant and failing to follow the procedures for notice as set forth in the policy. Because the court finds that the defendant had no duty to defend or indemnify, whether Kent failed to timely notify the defendant of the underlying suit is a nonissue and will not be addressed by this court.
 CONCLUSION
For the foregoing reasons, it is the opinion of the court that the policy excludes coverage for the intentional conduct that forms the basis of the plaintiff's allegations against Kent in counts two and four of the plaintiff's operative complaint. Moreover, the court concludes that the defendant has carried its burden of demonstrating the absence of genuine issues of material fact on both counts of the plaintiff's amended complaint. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's cross motion for summary judgment is denied.
BY THE COURT
Skolnick, J.